I «SOL GOTHARD, Judge.
In this workers’ compensation matter, the claimant, Diane Dioguardi, appeals an adverse decision from the Office of Workers’ Compensation. In the decision, the trial court found that claimant failed to meet her burden of proof that she was entitled to workers’ compensation as a result of a disability due to an occupational disease. Consequently, the court rendered a judgment in which it dismissed the disputed workers’ compensation claim with prejudice.
The only issue presented for our review by claimant is whether the trial court erred in allowing defendant’s expert witness to testify at trial.
The record shows that claimant filed a disputed claim for benefits with the Office of Workers’ Compensation on August 30, 2000. In the petition, claimant alleges she developed carpal tunnel syndrome as a result of her employment as a bartender at the Holiday Inn in Gretna, Louisiana. In due course, the matter went to trial and judgment was rendered in favor of defendant, employer.
Claimant, a thirty-two-year-old women who is married with two children, testified that she was employed as a bartender at the Holiday Inn in Gretna since June of 1996. She worked five or six days a week consistently from 1996 until June 2000. She stated that within a few months of her employment she began working ten to twelve hour shifts, in addition to private parties. She maintained |3that she repeatedly opened beer bottles with a twist of her wrist. During Super Bowl 2000, she began experiencing pain in her hands and arms, which made it difficult to do her job. The pain continued and grew worse.
Claimant sought medical help and was diagnosed with carpal tunnel syndrome. She was treated with cortisone injections and splints and eventually underwent surgery. In her testimony, claimant explained that the right arm is worse than the left arm. She stated that she still experiences pain, numbness, and tingling in her right hand. On the left side, she has numbness in her elbow. At the time of trial, claimant was still unable to work. She stated that she is certain the repetitive motions related to her employment as bartender caused the carpal tunnel syndrome.
Claimant also introduced medical records that show her diagnosis and treatment for carpal tunnel syndrome. The records show that claimant sought medical treatment for numbness, pain, and tingling in her hands in July 2000. She was tested *382 for arthritis and carpal tunnel syndrome. A general assessment of the claimant made by a treating physician states that the claimant has carpal tunnel syndrome on the right side. The assessment also states the opinion that the claimant’s generalized musculoskeletal symptoms indicate a systemic disorder, and suggested the need for a complete blood count and studies for a rheumatological evaluation, because of claimant’s complaint of pain from the shoulders down to the fingertips in both arms. There is no statement in any of the treating physicians’ reports to establish a causal link to claimant’s employment other than the claimant’s report to the doctors that the condition began after she worked as a bartender twisting off beer tops. Further, the medical records do not establish a disability as a result of the syndrome.
The medical records show that surgery was performed on the right wrist to relieve the condition in October 2000. Because claimant had no objective finding [4that would indicate compression of the left media nerve at the wrist, no surgery was performed on that side. Claimant received physical therapy that brought her range of motion back to normal and improved her grip strength. However, claimant continued to complain of numbness in both arms at the shoulders and continued to request left hand surgery. In one report dated January 15, 2001, one of the treating physicians, Dr. Kathleen Robertson, noted that her grip was still weak in both wrists after physical therapy and opined that, “I don’t think she is giving it her entire effort.” In the final report by Dr. Robertson dated April 28, 2001, she states that the claimant is still complaining that both upper extremities go totally numb and she cannot move her fingers. Claimant also complains that she “feels like somebody is squeezing her from the shoulders down to her fingers.” Dr. Robertson stated that there are no clinical findings to explain the pain. Dr. Robertson suggested ordering a complete blood count with platelets and a liver panel, along with other tests that might explain the chronic fatigue syndrome. The results of these tests are unknown from the record.
Defendant’s expert, Dr. Harold Stokes, examined claimant and reviewed her medical records during the course of the litigation. His written report was introduced into evidence and is contained in the record. In that report, Dr. Stokes opined that “it is highly unlikely that this patient’s carpal tunnel syndrome is related to her work as a bartender.” He further stated, “I would not consider carpal tunnel syndrome in a bartender a cumulative or repetitive trauma disorder as the actions that are performed are many and varied.” Dr. Stokes also stated that he found no clinical findings of carpal tunnel syndrome in the left hand. He stated that “many of her complaints were nonanatomic in nature and I suspect strong functional overlay in this patient.” Dr. Stokes opined that claimant was capable of unrestricted work.
|sAt trial, defendant sought to call Dr. Stokes to the stand. Claimant objected to the presentation of Dr. Stokes’ live testimony on the basis that he was not listed on the defendant’s pre-trial questionnaire. Claimant argued that Dr. Stokes’ report was not received in time to allow claimant’s expert to review the report, and claimant would be prejudiced by the inability to properly refute Doctor Stokes’ testimony.
Defendant admitted that Dr. Stokes’ report was received a few days before trial and immediately forwarded it to claimant’s counsel. Defendant maintains that he called claimant’s counsel to discuss settle *383 ment when the report was received, and in that conversation told opposing counsel that Dr. Stokes would testify at trial. Claimant made no objection at that time. Defendant further noted that, although opposing counsel knew for over a month that Dr. Stokes was the defendant’s expert witness and that his report would be used at trial, no objection or request for continuance was made by claimant.
The trial judge ultimately decided to allow Dr. Stokes to testify, after finding no prejudice to claimant, and noting that claimant could cross-examine Dr. Stokes on the witness stand. It is that decision which forms the main assignment of error in claimant’s brief to this court.
The record shows that the trial court rendered a Pre-Trial Order on March 20, 2001 after conducting a conference with both parties present. In that order the trial court stated “(M)edical testimony is to be by deposition unless you have specific orders to the contrary.” (emphasis in original). There is no indication in the record, or in defendant’s argument that any request was made to allow Dr. Stokes’ live testimony prior to the morning of trial. However, it is clear that Dr. Stokes was not a surprise witness, as claimant had submitted to an examination by Dr. Stokes on June 27th. Further, claimant admitted receiving a letter from defendant dated August 17th (seven days before trial) in which it was declared that | fiDr. Stokes’ written report would be admitted at trial. Also, Dr. Stokes was accepted by both parties as defendant’s expert, and his written report was offered into evidence without objection.
Whether or not expert witnesses are allowed to testify is within the trial court’s discretion, and absent an abuse of that discretion the decision will not be overturned on appellate review. Dufrene v. Willingham, 97-1239 (La.App. 5th Cir.10/28/98), 721 So.2d 1026, 1032; writ denied, (La.3/12/99), 739 So.2d 212. In the instant case we cannot say the trial court erred in allowing live medical testimony at trial in contradiction of its prior order.
We also note that even disregarding Dr. Stokes’ testimony, there is no manifest error in the trial court’s final ruling. LSA-R.S. 23:1031.1(B) provides that work-related carpal tunnel syndrome is an occupational disease. In Seal v. Gaylord Container Corp., 97-0688 (La.12/2/97), 704 So.2d 1161, 1164 the Supreme Court explained:
LSA-RS 23:1031.1(A) entitles every employee who is disabled because of the contraction of an occupational disease to receive compensation benefits, provided that the employee’s illness arises out of and in the course and scope of his employment. LA. REV. STAT. ANN. 23:1031.1(A) (West 1985). LSA-RS 23:1031.1(B) defines an “occupational disease” as “that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such a disease.” LA. REV. STAT. ANN. 23:1031.1(B) (West Supp.1997). This causal link between the employee’s illness and work-related duties must be established by a reasonable probability. Once the employee has established the existence of an occupational disease, for his illness to be compensable, the employee must further establish that the illness is disabling. Id. (Citations omitted)
Carpal tunnel syndrome is a listed occupational disease. Nevertheless, it must be work-related to be compensable. Dvorak v. Melvin Jones Fram, Contractors., 96-701 (La-App. 5th Cir.1/15/97), 688 So.2d 94. Whether the claimant has a work-related condition is a question of fact *384 to be decided by the trier of fact. Factual determinations made by the trier of fact will not be overturned |7absent a showing of manifest error. Id. Here there is no causal link established by the treating physician. Further, there are indications in the medical records that claimant’s arm pain is unrelated to the carpal tunnel syndrome. We also note that, with the exception of two no work slips early in the course of claimant’s treatment, no indication of disability was stated in the records of attending physicians. Under these facts, we cannot find manifest error in the trial court’s ruling. For the foregoing reasons the judgment of the trial court is affirmed.

AFFIRMED.